FILED
2019 Dec-18  PM 02:16
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA MIDDLE DIVISION

**James McKinney,**

**PLAINTIFF(S),**

**V.**                                           **CASE NO.:**

**Etowah County Sheriff's Department, Brandon Hare, Logan Page, Anthony Davis, and William Langdale,**          **JURY TRIAL DEMANDED**

**DEFENDANT (S).**

## COMPLAINT

## I.   INTRODUCTION

Christopher Shane McKinney ("Shane" or "McKinney") went to the Etowah County Sheriff's Office on January 24, 2018, because he needed help. McKinney walked up to the building seeking assistance because he believed that people were trying to hurt him. He believed that someone was trying to kill him. Instead of giving Shane the help he needed, several employees of the Etowah County Sheriff's Department illegally detained him, rifled his pockets, attempted to handcuff him, subdued him by force, and ultimately killed him by deploying tasers into sensitive areas of his upperbody. Christopher McKinney died on the concrete outside of the Etowah County Sheriff's Department as its employees laughed and complained

about having to use unwarranted force upon a person who had committed no crime, had no weapon, and whose only mistake was seeking help at the Sheriff's Office, an agency whose purpose is to protect people in the community.

## II. JURISDICTION

1. This is a civil action arising under the United States Constitution; 42 U.S.C. § 1983; Title II of the Americans with Disabilities Act, 42 U.S.C. § 1231 *et seq.;* and Section 504 of the Rehabilitation Act, 29 U.S.C. § 701 *et seq.;*

2. The events that form the basis of this Complaint took place in Gadsden, Alabama. This case is properly brought in the Northern District of Alabama.

## III. PARTIES

3. James McKinney is the Personal Representative of Christopher Shane McKinney's Estate. James McKinney is a resident of Etowah County, Alabama.

4. Brandon Hare was at all times relevant to this action a Correctional Officer at the Etowah County Sheriff's Department. He is a resident of Etowah County, Alabama. Hare is sued in his individual capacity.

5. Logan Page was at all times relevant to this action a Correctional Officer at the Etowah County Sheriff's Department. He is a Resident of Etowah County. Page is sued in his individual Capacity.

6. Anthony Davis was at all times relevant to this action a Deputy Sheriff at the Etowah County Sheriff's Department. He is a resident of Etowah County, Alabama. He is sued in his individual capacity.

7. William Langdale was at all times relevant to this action a Sargeant with the Etowah County Sheriff's Office. He is a resident of Etowah County, Alabama. He is sued in his individual capacity.

8. The Etowah County Sheriff's Department is an arm of the State of Alabama.

9. The Sheriff's Department receives federal funding such that it is subject to the provisions of Section 504 of the Rehabilitation Act.

10. The Sheriff's Department is also an entity subject to suit for the acts and omissions of its employees under Title II of the Americans with Disabilities Act.

## IV.  FACTS

11. The plaintiff realleges and reincorporates each of the previous paragraphs as is fully set out herein.

12. Christopher McKinney was a person with a disability, a mental illness that affected one or more major life activities including, but not limited to, thinking, working, and communicating with others.

13. Mr. McKinney's disabilities caused him to have paranoid thoughts.

14.    On January 24, 2018, Etowah County Sheriff's Department employee Jamie Capes walked to her car outside the Sheriff's Department.

15.    While she was walking, Capes noticed McKinney pacing the parking lot.

16.    Upon information and belief, pacing in a parking lot is not a crime under Alabama law.

17.    According to Capes, McKinney walked up the stairs toward the entrance and then walked down the stairs.

18.    Upon information and belief, walking up and down stairs is not a crime under Alabama law.

19.    Capes walked back into the Sheriff's Department and told Deputy Anthony Davis and Sargeant William Langdale what she had seen.

20.    Davis and Langdale went outside to investigate Capes's claims.

21.    Davis and Langdale intercepted McKinney outside the building.

22.    McKinney said, "I need some help," as he attempted to enter the building.

23.    Davis and Langdale continued to engage McKinney, who repeated, "I need some help."

24.    Davis and Langdale asked McKinney to go inside the Sheriff's office.

25.     McKinney repeated, "I just need some help. People have been hurting me."

26.     Davis asked McKinney what his name was.

27.     Although McKinney was initially willing to respond to the officers' inquiries, he changed his mind and told the officers, "that's okay."

28.     Upon information and belief, a person who is not suspected of a crime does not have to provide his name to the police.

29.     Then McKinney attempted to leave the Sheriff's Office, sliding his body out of the door as Langdale was blocking in the entry way.

30.     Upon information and belief, leaving the Sheriff's Department building after deciding not to seek help is not a crime under Alabama law.

31.     Langdale asked McKinney whether he had identification.

32.     When McKinney told the officers that he did have identification, Langdale grabbed McKinney's arm in one hand and grabbed McKinney's wallet out of his back pocket.

33.     Then, after taking the wallet, Langdale twisted McKinney's arm in an attempt to handcuff him.

34.     McKinney stiffened his body to avoid being handcuffed.

35.     Langdale threatened McKinney, saying, "We can do this the easy way or the hard way."

36.     McKinney pleaded with the officer, saying, "I didn't do anything."

37.     Langdale and Davis continued to try to subdue McKinney, who was not accused of any crime.

38.     McKinney pleaded with the deputies, "Please help me!"

39.     As Langdale continued to forcibly detain McKinney against his will for no suspected crime, Langdale pulls away from the group, pulls out his Taser and deploys it on McKinney.

40.     The Taser leads attached to McKinney's upper torso and shocked him.

41.     After the initial shock, McKinney attempted to pull the Taser leads out of his body so he could not be shocked anymore.

42.     Deputy Davis continued to engage McKinney in an attempt to subdue him.

43.     Langdale and Davis both converged on McKinney trying to wrestle him to the ground.

44.     The Deputies called out on the radio for additional help forcibly detaining McKinney.

45.     As the the three struggled, Davis took out his Taser and deployed it at close range into McKinney's torso.

46.     Davis deployed the Taser again directly into McKinney's abdomen.

47.     As McKinney, Davis, and Langdale continued to struggle, they are joined by Etowah County Corrections Officers, Brandon Hare and Logan Page.

48.     As the Corrections Officers joined the melee, Davis said, "the Taser isn't working."

49.     Hare pulled out his Taser and deployed it into Christopher McKinney in his right abdomen, causing McKinney to fall face down on the ground.

50.     Then Page deployed his Taser into McKinney yet again.

51.     Deputy Davis then double handcuffed the now prone and inert McKinney.

52.     The Deputies and Corrections officers then left McKinney face down on the concrete while a crowd of Sheriff's Department employees gathered.

53.     McKinney lay face down on the ground for several minutes while one of the officers complained that his sunglasses were broken.

54.     Another officer complained that he had "wasted $100.00 worth of cartridges on him."

55.     After a long delay, the Sheriff's deputies decided to roll, the now silent McKinney onto his back allowing his head to hit the concrete with an audible thud.

56.     The Sheriff's department continued to discuss the incident, accused McKinney of being high on drugs and rifled through his wallet to try to find out who he was.

57.     For the first several minutes, no Sheriff's Department employee rendered any aid, other than to walk near McKinney's body and declare that he was still breathing.

58.     Christopher Shane McKinney died.

59.     There were no illegal drugs found in McKinney's system at the time of his death.

60.     There were no warrants for McKinney's arrest at the time of his death.

61.     McKinney's last words before he died were "Y'all will pay for this!"

## V.    CAUSES OF ACTION

### Count One.       42 U.S.C. § 1983

62.     The plaintiff realleges and reincorporates each of the previous paragraphs as is fully set out herein.

63.     James Mckinney asserts this count under 42 U.S.C. § 1983 against Langdale, Davis, Hare and Page.

64.     This count is brought against defendants in their individual capacities.

65.     Before or soon after Defendants began the unprovoked and unwarranted attack of McKinney, Hare, Page, Davis, and Langdale became aware of his physical and mental disabilities.

66.     McKinney's disabilities were evident from the outset.

67.    Langdale, Davis, Hare, and Page observed McKinney in his speech, behavior, the reports by a Sheriff's Department employee that he was acting strangely.

68.    At no point had McKinney committed a crime or in any way threatened Defendant or anybody else. Nor was there any reason to believe McKinney was armed or dangerous.

69.    Indeed Plaintiff was utterly harmless.

70.    Defendants' use of force under these circumstances, carried out while he was acting under color of state or local law, was excessive and objectively unreasonable.

71.    Langdale, Davis, Hare, and Page's actions caused McKinney to suffer substantial harm including, but not limited to, physical pain and suffering and both mental and emotional distress.

72.    Accordingly, Defendants are liable for violating McKinney's rights under the Fourth Amendment, as incorporated against the states by the Fourteenth Amendment.

73.    All of these Defendant Officers were acting under color of state or local law.

74.     Those that twisted his arm, restrained his movement, wrestled him to the ground and tased him repeatedly in his chest and abdomen. used objectively unreasonable force.

75.      Others stood by idly, failing to take reasonable available steps to halt this use of excessive force, even though they knew or should have known that their fellow officers were violating McKinney's rights.

76.     Defendant Officers thus caused McKinney to suffer substantial harm including, but not limited to, physical pain and suffering, both mental and emotional distress, and death.

77.     Accordingly, they are all liable for violating McKinney's Fourth Amendment rights, as incorporated against the states by the Fourteenth Amendment.

### Count Two.      42 U.S.C. § 1983

78.     The plaintiff realleges and reincorporates each of the previous paragraphs as is fully set out herein.

79.     Langdale, Davis, Hare, and Page had neither probable cause nor reasonable suspicion to believe that McKinney had committed or had attempted to commit a crime at the time they pursued him into the Sheriff's Department, detained him, searched his body, handcuffed him and questioned him.

80.     Nor at that time did Langdale, Davis, Hare, and Page have a reasonable basis to believe that McKinney was armed or otherwise dangerous.

81.     Rather than permitting McKinney to leave as he desired, Langdale, Davis, Hare, and Page pursued him and forcibly apprehended him.

82.     In so doing, Langdale, Davis, Hare, and Page subjected McKinney to physical abuse by hitting, tasing, dragging, and wrestling him to the ground.

83.     As he suffered through this brutality, McKinney was unable to leave.

84.     Each time Langdale, Davis, Hare, and Page detained McKinney against his will, they, who were acting under color of state or local law, did so without a warrant.

85.      Langdale, Davis, Hare, and Page's actions caused McKinney to suffer substantial harm including, but not limited to, physical pain, and suffering and both mental and emotional distress.

86.     Accordingly, defendants are liable for violating McKinney's Fourth Amendment right, as incorporated through the Fourteenth Amendment, to be free from arrest without probable cause and/or to be free from unreasonable seizure.

87.     Defendants knew or should have known that McKinney was harmless, that he had a mental illness, and that nobody had a warrant or cause to detain, let alone to arrest McKinney.

88.     Nevertheless, several Defendant Officers accosted McKinney, who was unarmed, and proceeded to detain him before attacking him and tazing him.

89.     At no point—from their arrival on the scene until they began to detain, search and assault him —was there a reasonable basis on which Defendant Officers Langdale, Davis, Hare, and Page could have believed that McKinney had committed a crime, especially in light of his readily apparent mental disabilities.

90.     Defendant Officers Langdale, Davis, Hare, and Page were acting under color of state or local law.

91.     By unlawfully detaining McKinney and then falsely arresting him, they caused McKinney to suffer substantial harm including, but not limited to, physical pain, suffering, mental and emotional distress, and ultimately, death.

92.     Accordingly, they are liable for violating McKinney's Fourth Amendment right, as incorporated through the Fourteenth Amendment, to be free from arrest without probable cause or to be free from unreasonable seizure.

**Count Three.     VIOLATION OF THE AMERICANS WITH DISABILITIES ACT**

93.     The plaintiff realleges and reincorporates each of the previous paragraphs as is fully set out herein.

94.     James Mckinney asserts this count count is brought against and the aforementioned Etowah County Sheriff's Department.

95.     Christopher McKinney was a person with a disability, as defined by 42 U.S.C. § 12102, 29 U.S.C. § 705, because Mental Illness involving delusion and

paranoia substantially limited several of his major life activities, including talking, communicating, thinking, and working.

96.     Defendant Officers Langdale, Davis, Hare, and Page knew or should have known that McKinney is a person with a disability because it was obvious and they were alerted to that fact by their co-worker.

97.     Nevertheless, Defendant Officers Langdale, Davis, Hare, and Page failed to reasonably accommodate that disability in the course of their unprovoked pursuit, search, detention, assault causing him to suffer greater injury and indignity than other individuals who come to the Sheriff's Department to seek help.

98.     In addition to the severe emotional distress resulting from these actions, McKinney died at the hands of these officers as a result of their failure to reasonably accommodate his disability.

99.     Potential accommodations might have included, but are not limited to, allowing him to leave as he requested; arresting him, if it was truly necessary, without the use of force; contacting an officer or employee who specializes in communicating with disabled individuals to facilitate any necessary interaction, removal, or arrest; and ceasing the use of force once it was evident that McKinney was unarmed and terrified.

100.    By declining to take any of these measures, among others available to them, Defendant Officers Langdale, Davis, Hare, and Page denied McKinney the

benefits and services of their department, as well as subjected him to discrimination, on account of his disability.

101.   As a public entity that receives federal financial assistance, their employer, the Etowah County Sheriff's Department, is liable for Defendants', its employees', behavior.

102.   Additionally, Defendants are liable under 42 U.S.C. § 1983 for violations of Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act, as these violations are a result of a failure to train, monitor, and discipline their officers and employees; their deliberate indifference thereto; and a practice, policy, or procedure that allows such violations to occur.

103.   Defendant Officers knew or should have known of McKinney's disability.

104.   Additionally, Defendant Officers interacted with McKinney as they initially approached him and talked to him because McKinney's disabilities were evident upon interacting with him, they knew or should have known of his disability.

105.    Failing to allowing him to leave or to approach him in an alternative, safe manner thus denied him the services and benefits offered to those who are arrested by and released from the custody of the Defendant.

106.   McKinney was entitled to visit the Sheriff's Department in a safe and appropriate manner consistent with his disability, and the failure to allow him to do

so placed him at risk caused his death, and subjected him to discrimination on the grounds of his disability.

107. Because of these actions, McKinney suffered severe mental and emotional distress and death.

108. Whether McKinney's detention, assault, and killing were the actions of Officers Langdale, Davis, Hare, and Page, the agency, or agents acting at the behest of the Etowah County Sheriff's Department the people who assaulted McKinney were employed by the Defendant or acting under the Defendant's direction.

109. As a public entity that receives federal financial assistance, the Defendant, the Etowah County Sheriff's Department, is vicariously liable to the Plaintiff for damages under Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act.

110. Additionally, the Etowah County Sheriff's Department is liable for violations of Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act under 42 U.S.C. § 1983.

111. Upon information and belief, the Etowah County Sheriff's Department has not implemented any relevant policies or trained its employees on the application of the Americans with Disabilities Act or the Rehabilitation Act to the interactions with people who are seeking the assistance of the Sheriff's Department.

112.   The Defendant thus remains deliberately indifferent to these violations and has instituted a practice, policy, or custom of not accommodating disabled individuals to ensure a safe and appropriate treatment in accordance with their disabilities.

**Count Four.**        **Section 504 of the Rehabilitation Act, 29 U.S.C. § 701 et. seq.**

113.   The plaintiff realleges and reincorporates each of the previous paragraphs as is fully set out herein.

114.   The plaintiff realleges and reincorporates each of the previous paragraphs as is fully set out herein.

115.   James Mckinney asserts this count is brought against the aforementioned Etowah County Sheriff's Department.

116.   Christopher McKinney was a person with a disability, as defined by 42 U.S.C. § 12102, 29 U.S.C. § 705, because Mental Illness involving delusion and paranoia substantially limited several of his major life activities, including talking, communicating, thinking, and working.

117.   Defendant Officers Langdale, Davis, Hare, and Page knew or should have known that McKinney is a person with a disability because it was obvious and they were alerted to that fact by their co-worker.

118.   Nevertheless, Defendant Officers Langdale, Davis, Hare, and Page failed to reasonably accommodate that disability in the course of their unprovoked detention and inexplicable use of force against McKinney.

119.   In addition to the severe emotional distress resulting from these actions, McKinney died at the hands of these officers as a result of their failure to reasonably accommodate his disability.

120.   Potential accommodations might have included, but are not limited to, allowing him to leave as he requested, arresting him, if it was truly necessary, without the use of force; contacting an officer or employee who specializes in communicating with disabled individuals to facilitate any necessary interaction, removal, or arrest; and ceasing the use of force once it was evident that McKinney was unarmed and terrified.

121.   By declining to take any of these measures, among others available to them, Defendant Officers Langdale, Davis, Hare, and Page denied McKinney the benefits and services of their department, as well as subjected him to discrimination, on account of his disability.

122.   As a public entity that receives federal financial assistance, their employer the Etowah County Sheriff's Department is liable for Defendants', its employees' behavior.

123.   Additionally, Defendants are liable under 42 U.S.C. § 1983 for violations of Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act, as these violations are a result of a failure to train, monitor, and discipline their officers and employees; their deliberate indifference thereto; and a practice, policy, or procedure that allows such violations to occur.

124.   Defendant Officers knew or should have known of McKinney's disability.

125.   Additionally, Defendant Officers interacted with McKinney as they initially approached him and talked to him. Because McKinney's disabilities were evident upon interacting with him, they knew or should have known of his disability.

126.   Failing to allow him to leave or to engage with him in an alternative, safe manner thus denied him the services and benefits offered to those who are arrested by and released from the custody of the Defendant.

127.   McKinney was entitled to visit the Sheriff's Department in a safe and appropriate manner consistent with his disability, and the failure to allow him to do so placed him at risk caused his death, and subjected him to discrimination on the grounds of his disability.

128.   Because of these actions, McKinney suffered physical abuse, mental and emotional distress and death.

129.   Whether McKinney's detention, assault, and killing were the actions of Officers Langdale, Davis, Hare, and Page, the agency, or agents acting at the behest of the Etowah County Sheriff's Department the people who assaulted McKinney were employed by the Defendant or acting under the Defendant's direction.

130.   As a public entity that receives federal financial assistance, the Etowah County Sheriff's Department is vicariously liable to the Plaintiff for damages under Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act.

131.   Additionally, the Defendant is liable for violations of Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act under 42 U.S.C. § 1983.

132.   Upon information and belief, the Etowah County Sheriff's Department has not implemented any relevant policies or trained its employees on the application of the Americans with Disabilities Act or the Rehabilitation Act to the interactions with citizens who seek help at the Sheriff's Department.

133.   The Defendant thus remains deliberately indifferent to these violations and has instituted a practice, policy, or custom of not accommodating disabled individuals to ensure a safe and appropriate treatment in accordance with their disabilities.

## VI.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

A.      An award of compensatory damages, including all appropriate pre- and post-judgment interest, in an amount to be determined that would adequately compensate for the injuries caused by the conduct of the Defendants alleged herein (as well as the cost of treating those injuries), including, but not limited to: physical harm, emotional distress, pain and suffering, embarrassment, and feelings of unjust treatment;adf

B.      An award of punitive damages in an amount to be determined for the intentional and reckless conduct alleged herein that would effectively deter the Defendants and others similarly situated from engaging in similar behavior in the future;

C.      An award of costs and reasonable attorneys' fees in this action under 42 U.S.C. §§ 1983, 1988, and 12205; and 29 U.S.C. § 794a;

D.      Appropriate injunctive relief; and

E.      Such other relief as this Court deems just and proper.


_____
Kira Fonteneau

OF COUNSEL:
The Fonteneau Firm LLC - A member of the 5
Points Law Group LLC
2151 Highland Avenue, Suite 205
Birmingham, AL 35205
T. 205.564.9005 F. 205.564.9006

## PlAINTIFF DEMANDS TRIAL BY STRUCK JURY

## PLEASE SERVE DEFENDANT AS FOLLOWS:

Etowah County Sheriff's Department
827 Forrest Ave
Gadsden, Alabama 35901

Brandon Hare
c/o Etowah County Sheriff's Department
827 Forrest Ave
Gadsden, Alabama 35901

Logan Page
c/o Etowah County Sheriff's Department
827 Forrest Ave
Gadsden, Alabama 35901

Anthony Davis
c/o Etowah County Sheriff's Department
827 Forrest Ave
Gadsden, Alabama 35901

William Langdale
c/o Etowah County Sheriff's Department
827 Forrest Ave
Gadsden, Alabama 35901